UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BRIDGETT LOVETT,

                Plaintiff,

            - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3023 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Bridgett Lovett brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Supplemental Security Income ("SSI") and Disability Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 14, 17.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Procedural History

On December 2, 2016, Plaintiff filed an application for DIB and SSI, claiming that she had been disabled due to complications from spinal surgery and diabetes since November 12, 2016. (Tr.[1] 10, 60–61, 174, 179.) The claim was initially denied on February 7, 2017. (Tr. 76–79.) After her claim was denied, Plaintiff requested and appeared with an attorney for a video hearing before administrative law judge Gregory M. Hamel (the "ALJ") on November 1, 2018. (Tr. 10, 19.)

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript. (Dkt. 12.)

During the hearing, vocational expert Tricia Muth testified by telephone. (Tr. 10.) By decision dated May 16, 2019, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from November 12, 2016, her alleged onset date, through the date of the ALJ's decision. (Tr. 10–19.) Plaintiff's request for a review of the ALJ's decision was denied by the Appeals Council on May 4, 2020. (Tr. 1–6.) Thereafter, Plaintiff timely commenced this action.[2]

## II. The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

---

[2] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on May 9, 2020 (*i.e.*, five days after Plaintiff's request to appeal the ALJ's decision was denied on May 4, 2020) and that Plaintiff's filing of the instant action on July 8, 2020—60 days later—was timely. (*See generally* Complaint, Dkt. 1.)

2

impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities." *Id.* §§ 404.1522(a), 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* pt. 404, Subpt. P, App. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, at step one, the ALJ determined that Plaintiff met the insured status requirements of the SSA through December 31, 2018 and had not engaged in substantial gainful activity since the alleged onset date of November 12, 2016. (Tr. 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: history of thoracic[3] epidural abscess,[4] osteoarthritis of the knees, degenerative disc disease, diabetes, hypertension, and obesity. (Tr. 13.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (*Id.*) The ALJ then determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can only occasionally climb stairs, balance, stoop, kneel, crouch and crawl; cannot climb ladders and similar devices; and cannot work in hazardous environments.

(Tr. 14 (footnote omitted).) Then, at step four, the ALJ concluded that due to her severe impairments, Plaintiff could not perform her past work as a dental assistant. (Tr. 17.) Finally, at step five, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including charge account clerk and document preparer. (Tr. 18.) The ALJ thus concluded that Plaintiff was not disabled. (Tr. 18–19.)

---

[3] "Thoracic" refers to the part of the spine located in the upper and middle part of the back. *See Thoracic Spinal Cord Injury*, SHEPHERD CENTER, https://www.shepherd.org/patient-programs/spinal-cord-injury/levels-and-types/thoracic-spinal-cord-injury (last visited Sept. 28, 2021).

[4] An "epidural abscess" is an infection that forms in the space between the bones of the spine and the lining membrane of the spinal cord. *See Epidural Abscess*, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/epidural-abscess (last visited Sept. 28, 2021). The infection is typically caused by a staphylococcus aureus bacterial infection or a fungus. (*Id.*) It appears that Plaintiff's infection may have followed a dental procedure. (Tr. 415, 421 ("Prior to her admission, she had a tooth extraction").)

4

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (alterations and internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinions of treating physicians Joseph Paul, M.D., and Kernilde Jean-Jerome, M.D. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 15, at 8.) Plaintiff further argues that, after according only "little weight" to these medical opinions, the ALJ impermissibly relied upon his own lay determination of the evidence to construct an RFC that was not supported by any medical

5

opinion. (*Id.* at 13.) For the reasons provided below, the Court grants Plaintiff's motion and remands for further proceedings so that the ALJ may re-consider and explain the weight assigned to the treating physicians' opinions and obtain an additional medical opinion regarding Plaintiff's physical and functional limitations during the relevant time period. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale.")

The alleged onset of Plaintiff's disability is November 12, 2016, the date she underwent spinal surgery to treat a thoracic epidural abscess. (*See* Tr. 172 (alleged onset date), 405–07.) Prior to surgery, it was reported that Plaintiff complained of weakness and motor function deficits in her lower extremities (Tr. 310, 315, 326, 421 (noting that Plaintiff "present[ed] to the hospital with inability to walk and was bedridden")), and that, among other things, she required the assistance of two or more people to walk and total assistance to dress her lower half and use the toilet (Tr. 316–17). A pre-surgery exam reflected "0/5 strength" in Plaintiff's hip flexion muscles and plantar and dorsiflexion[5] in her right leg, as well as "1/5 strength" in dorsiflexion in her left leg. (Tr. 406.) Following surgery, Plaintiff received intensive inpatient rehabilitation services, including physical and occupational therapy, to regain some measure of mobility, balance, and functional ability. (*See generally* Tr. 348–98.) After nearly a month of such services, Plaintiff continued to have "[b]alance deficits and [s]trength impairments." (Tr. 366 (report signed January 18, 2017 indicating start of care on December 16, 2016).)

---

[5] "Plantar flexion" involves moving the foot in a downward direction to the ground, while "dorsiflexion" involves raising the foot upwards toward the shin. *See Dorsiflexion and Plantar Flexion*, MAYWOOD PHYSICAL THERAPY & REHAB CENTER, https://www.maywoodpt.com/blog/detail/dorsiflexion-and-plantar-flexion (last visited Sept. 28, 2021).

A March 29, 2017 post-surgery MRI report revealed "[n]o residual abnormality" in her spine. (Tr. 552.) On April 5, 2017, David Chen, D.O., who performed Plaintiff's surgery, reported that during a follow-up visit, Plaintiff stated that she was "able to ambulate at home," "extremely happy with her outcome," and "getting stronger everyday [sic] with the help of physical therapy." (Tr. 421.) Dr. Chen noted that Plaintiff's MRI showed "[n]o residual abnormality," but that Plaintiff "is 100% disable[d] due to her spinal cord injury that she is still recovering from." (*Id.*) Dr. Chen advised Plaintiff to continue with physical therapy, explained the importance of losing weight and controlling her diabetes, and instructed Plaintiff to follow up with him as needed. (*Id.*)

On May 31, 2017, Dr. Joseph Paul, who provided primary care to Plaintiff as early as 2008 (Tr. 681) and consulted on Plaintiff's pre-surgery MRI (Tr. 295), evaluated Plaintiff, noting that she was "currently on wheelchair and/or walker," but otherwise felt fine (Tr. 623). Dr. Paul also noted that Plaintiff experienced leg cramps, muscle weakness, gait abnormality, lancinating[6] pains in her feet, and paresthesia,[7] and assessed Plaintiff as having "paraplegia,"[8] Type 2 diabetes mellitus without complications, hypertension, and obesity. (Tr. 623–25.) Dr. Paul offered a substantially similar report of Plaintiff's condition on November 8, 2017. (Tr. 666–67.) That same date, Dr. Paul completed a form assessing Plaintiff's functional impairments based on a diagnosis

---

[6] "Lancinating" is characterized by piercing or stabbing sensations. *See Lancinating*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/lancinating (last visited Sept. 28, 2021).

[7] "Paresthesia" is a condition characterized by a tingling or numb feeling, sometimes called "pins and needles." *See Understanding the "Pins and Needles" Feeling*, UNIV. OF ROCHESTER MED. CTR., https://www.urmc.rochester.edu/encyclopedia/content.aspx?ContentTypeID=1&ContentID=58 (last visited Sept. 28, 2021).

[8] "Paraplegia" is paralysis that affects all or part of the trunk, legs, and pelvic organs. *See Spinal cord injury*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/spinal-cord-injury/symptoms-causes/syc-20377890 (last visited Sept. 28, 2021).

7

of "S/P Lumbar spine surgery with Paraplegia." (Tr. 400–01.) Dr. Paul opined that, among other things, Plaintiff can walk "less than one" city block without needing rest or experiencing significant pain and that, during an eight-hour workday, she will need to take unscheduled breaks due to "severe limitations" in her ability to sit, stand, and walk. (Tr. 400 (noting that Plaintiff can sit and stand/walk for "0" hours during a workday).) Dr. Paul further opined that Plaintiff can "occasionally"[9] lift and carry less than 10 pounds, but should never lift and carry more than that, and while Plaintiff "[h]as full motion/range of the hands," she faces "severe limitations with the lower extremities." (*Id.*) Finally, Dr. Paul opined that Plaintiff is likely to be absent from work more than four times a month due to her impairments. (Tr. 401.) On April 4, 2018, Dr. Paul again reported Plaintiff's leg cramps, muscle weakness, gait abnormality, lancinating foot pain, and paresthesia, assessed Plaintiff with paraplegia, and noted that she was "[s]table, on wheelchair and/or walker." (Tr. 671–72.)

On June 6, 2018, Plaintiff had her first visit with Dr. Kernilde Jean-Jerome, a new primary care provider, who noted that Plaintiff's ongoing medical problems included "ambulating with cane," but otherwise did not identify subjective complaints or objective abnormalities upon examination. (Tr. 409 (noting "first visit"), 415–16.) Dr. Jean-Jerome offered similar assessments of Plaintiff during four subsequent evaluations, including that Plaintiff continued to ambulate with a cane. (*See* Tr. 434 (June 22, 2018), 443 (July 2, 2018), 452 (July 30, 2018), 460 (August 15, 2018).) On September 14, 2018, Dr. Jean-Jerome completed a form assessing Plaintiff's functional impairments and offered an opinion that was substantially like that of Dr. Paul, including that Plaintiff can walk less than one city block because she is "always in pain;" can sit, stand, and walk "0" hours during an eight-hour workday; will need unscheduled breaks every 10 to 15 minutes

---

[9] "Occasionally" is defined as less than one-third of an eight-hour workday. (Tr. 400.)

because of her "severe limitations;" "can't walk without assist;" should never carry more than 10 pounds; and, despite having "range of hands," faces "limitations with legs and lower extremities." (Tr. 561.) Dr. Jean-Jerome also estimated that Plaintiff would likely be absent from work more than four times a month due to her impairments. (Tr. 562.)

In sum, Plaintiff's two treating physicians, Dr. Paul and Dr. Jean-Jerome, both provided opinions that Plaintiff's capacity to function in a workplace and during a workday is greatly restricted due to the severe limitations in her lower extremities.

"With respect to the nature and severity of a claimant's impairment(s), the SSA recognizes a treating physician rule[10] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, alterations, and citations omitted). Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "'Medically acceptable clinical and laboratory diagnostic techniques' include consideration of 'a patient's report of complaints, or history, as an essential diagnostic tool.'" *Burgess*, 537 F.3d at 128 (brackets omitted) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)). In determining that Plaintiff has the RFC to perform sedentary work[11] "except that she can only

---

[10] Although "[t]he current version of the SSA's regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations apply only "to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. §§ 404.1520c, 416.920c. Because Plaintiff's claim was filed on December 2, 2016, the treating physician rule applies.

[11] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is

occasionally climb stairs, balance, stoop, kneel, crouch and crawl; cannot climb ladders and similar devices; and cannot work in hazardous environments," the ALJ here did not give "controlling weight" to the medical source opinions of Plaintiff's treating physicians, but rather "very little weight." (Tr. 14–15.)

If the opinion of a treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. *See Clark*, 143 F.3d at 118; *see also* 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). The ALJ does not address the first factor, which is notable given that Dr. Paul had a treatment relationship with Plaintiff going back nearly a decade (Tr. 681), consulted on Plaintiff's pre-surgery spinal MRI (Tr. 295), and examined Plaintiff at least three times following her spinal surgery (Tr. 623, 666, 671), and that Dr. Jean-Jerome examined Plaintiff at least five times following her surgery (Tr. 409, 428, 437, 446, 454). Instead, it appears that the ALJ relied on the second and third factors to justify the "very little weight" given to Dr. Paul's and Dr. Jean-Jerome's opinions, which the ALJ described as "essentially stat[ing] that [Plaintiff] remains an invalid," which the ALJ found to be "at odds with the record after the early period [of] at issue hospitalization." (Tr. 15.)

---

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 416.967(a), 404.1567(a).

In identifying the portions of the record that he believes do not support the treating physicians' opinions, the ALJ cherry picks the record and overlooks evidence that *is* consistent with the severe limitations identified by Drs. Paul and Jean-Jerome. "Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, [he] cannot pick and choose evidence that supports a particular conclusion." *Noviello v. Comm'r of Soc. Sec.*, No. 18-CV-5779 (PKC), 2020 WL 353152, at *7 (E.D.N.Y. Jan. 21, 2020) (citation omitted); *Clarke v. Colvin*, No. 15-CV-354, 2017 WL 1215362 (KBF), at *9 (S.D.N.Y. Apr. 3, 2017) (finding it "improper" for an ALJ to "selectively rel[y] on evidence that weighed against a finding of a disability"). For example, the ALJ found that Dr. Paul's treatment records after May 2017 "do not indicate any significant complaints except for unspecified muscle weakness" nor discuss knee pain, and that clinical examinations showed normal strength and normal gait. (Tr. 16.) However, as described above, Dr. Paul's treatment records from May 31, 2017, November 8, 2017, and April 4, 2018, consistently note that over a year after Plaintiff's surgery and rehabilitation, she still experienced leg cramps, muscle weakness, gait abnormality, lancinating (*i.e.*, piercing or stabbing) pains in her feet, and paresthesia (*i.e.*, tingling or numb feeling). "[A] patient's report of complaints" are viewed as "an essential diagnostic tool," and may be considered in assessing whether a treating source's opinion is well-supported. *See Burgess*, 537 F.3d at 128 (citation omitted). That Dr. Paul noted Plaintiff's complaints of multiple lower extremity symptoms and assessed Plaintiff with "paraplegia" is consistent with, and support Dr. Paul's reliance on, that diagnosis in opining that, among other things, Plaintiff cannot walk more than one city block without pain or needing to rest and faces "severe limitations with [her] lower extremities." (Tr. 400–01.) A non-selective review of Dr. Paul's treatment records supports giving his opinion *more*, not less, weight.

11

As another example of the ALJ's selective reliance on the record to justify the "very little weight" given to the treating physicians' opinions, the ALJ noted that by April 2017, Plaintiff reported to her neurosurgeon (Dr. Chen) that she was ambulating at home, "extremely happy with her outcome," and getting stronger every day.[12]  (Tr. 15.)  However, the ALJ omits that in April 2017, Dr. Chen also found that despite these reports by Plaintiff and her MRI showing "[n]o residual abnormality," Plaintiff "is 100% disable[d] due to her spinal cord injury that she is still recovering from."  (Tr. 421.)  Relatedly, although the ALJ found that the "source records suggest [that Plaintiff] still required a wheelchair or walker as late as May 2017" (Tr. 15), he does not acknowledge the numerous notes in the record about Plaintiff's limited ambulatory status thereafter: Dr. Paul's note in November 2017 and April 2018 that Plaintiff was still "on wheelchair and/or walker" (Tr. 623, 667); Dr. Jean-Jerome's multiple notes between June and August 2018 that Plaintiff continued to ambulate with a cane (Tr. 434, 443, 452, 460); the September 13, 2018 note of an ENT specialist describing Plaintiff's gait as "wide-based with cane" (Tr. 465, 467); or the October 8, 2018 note from a mental health evaluation describing Plaintiff as "overweight and walking with a cane" (Tr. 568).  That Plaintiff was reported by all physicians who evaluated her during this time frame as using either a wheelchair, walker, or cane supports Dr. Paul's opinion about Plaintiff's limited mobility (Tr. 400–01) and Dr. Jean-Jerome's opinion that Plaintiff has "severe limitations" and "can't walk without assist" (Tr. 561).

---

[12] Dr. Chen actually noted that Plaintiff reported she was "getting stronger everyday *with the help of physical therapy*" (Tr. 421 (emphasis added)), a qualifier omitted from the ALJ's decision.  During the hearing, Plaintiff testified that she was no longer receiving physical therapy because she had exhausted her insurance coverage (Tr. 41–42), which could explain the discrepancy between her report of progress to Dr. Chen in April 2017 and of substantially impaired mobility to the ALJ in November 2018.

12

Although the Second Circuit does not require the ALJ to provide a "slavish recitation of each and every factor" considered in deciding to give a treating physician's opinion less than controlling weight, *see Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citation omitted), the ALJ must "set forth 'good reasons' for not crediting the opinion of the treating provider," *Selembo v. Comm'r of Soc. Sec.*, No. 19-CV-2902 (KAM), 2021 WL 1428599, at \*5 (E.D.N.Y. Apr. 15, 2021) (citing, *inter alia*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).  Here, the ALJ's apparent reasons for not giving controlling weight to Dr. Paul's and Dr. Jean-Jerome's opinions are based, at least in part, on an improper, selective reading of the record. The "[f]ailure to provide [] '"good reasons" for not crediting the opinion of a [plaintiff's] treating physician is a ground for remand.'" *Burgess*, 537 F.3d at 129–30 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  The ALJ failed to provide good reasons for assigning "very little weight" to Plaintiff's treating physicians' functional limitation opinions, and so remand for further consideration is appropriate.  On remand, the ALJ "is directed to comprehensively weigh and apply the regulatory factors and [to] consider the record *in its entirety* to determine the weight" to be given to Dr. Paul's and Dr. Jean-Jerome's opinions.  *See Selembo*, 2021 WL 1428599, at \*8 (emphasis added); *see also* 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).  If the ALJ again determines that these opinions are not entitled to controlling weight, the ALJ "must nonetheless articulate a basis for the alternative weight assigned." *Id.* (quoting *Knight v. Comm'r of Soc. Sec.*, No. 18-CV-2474 (KAM), 2020 WL 3085778, at \*7 (E.D.N.Y. June 10, 2020)).

Remand is also appropriate because it is unclear to the Court what, if any, medical opinion supports the RFC determination.  "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician." *Lao v. Comm'r of Soc. Sec.*, No.

13

18-CV-7462 (FB), 2020 WL 4194210, at *3 (E.D.N.Y. July 21, 2020) (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010)). While the ALJ may "choose between properly submitted medical opinions," he or she may not "set his [or her] own expertise against that of physicians who submitted opinions." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citation omitted). As discussed, the only medical opinions in the record that speak to Plaintiff's functional capacity in the workplace were given "very little weight" by the ALJ and are utterly at odds with the ALJ's finding that Plaintiff is capable of sedentary work without any limitations regarding standing, walking, lifting, carrying, or taking breaks. (Tr. 14); *See* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met"); *Id.* § 404.1567(a) (same). Simply put, there are no medical opinions in the record that support the ALJ's RFC determination. This is particularly troubling given Plaintiff's "S/P Lumbar spine surgery with Paraplegia" diagnosis (Tr. 400–01) and her testimony that she uses a walker at home because her "legs are numb from the knee down" and buckle when she stands up (Tr. 40–41), that the numbness in her lower extremities is a 9 out of 10 (Tr. 45), and that even with a walker she can walk for only 10 minutes and stand for 15 minutes (*id.*).

"An ALJ commits legal error when he makes a [RFC] determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities." *Van Dyne v. Saul*, No. 20-CV-260 (MKB), 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). It appears that the ALJ based the RFC determination here on the absence of any discussion of work-related limitations in Plaintiff's medical records, which amounts to "an impermissible interpretation of bare medical

14

findings." *Guarino v. Colvin*, No. 14-CV-598 (MAT), 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016) (collecting cases); *Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *6 (E.D.N.Y. Mar. 25, 2019) ("Without a supporting medical opinion of Plaintiff's functional limitations, the ALJ's RFC determination that Plaintiff was capable of sedentary work constituted an impermissible interpretation of bare medical findings and is not supported by substantial evidence." (internal quotation marks and citation omitted)). For that reason, on remand, the ALJ is directed to obtain an additional medical opinion on Plaintiff's physical and functional limitations during the relevant time period. *See Balaguer Perez*, 2019 WL 1324949, at *7.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2021
       Brooklyn, New York